IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| **HSBC MORTGAGE SERVICES, INC.,** | |
| Plaintiff, | Case No. 10 C 4747 |
| v. | Hon. Harry D. Leinenweber |
| **EQUISOUTH MORTGAGE, INC. and MORRIS A. CAPOUANO,** | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff's Motion for Summary Judgment. For the reasons stated herein, the Motion is granted as to the liability of both Defendants and denied as to the issue of appropriate damages.

I. BACKGROUND

In 2001, when home mortgages were not regarded as suspiciously as they are now, Plaintiff HSBC Mortgage Services, Inc. ("HSBC") and Defendant Equisouth Mortgage, Inc. ("Equisouth") signed a "flow loan agreement" (the "FLA"). The parties were known by different names then, but all agree that the contract survived their name changes.

The FLA provided that HSBC would buy mortgages from Equisouth, a loan originator, and be entitled to the resultant payments due under those mortgages. HSBC made its purchase of those mortgages

conditional on several guarantees, not the least of which was the personal guaranty agreement of the principal of Equisouth, Defendant Morris Capouano.

HSBC also conditioned the agreement on nine representations and warranties by Equisouth as to Equisouth's condition, and thirty-eight warranties by Equisouth as to the condition of the underlying mortgages. The parties agree on this.

The FLA also provided that, if any warranty as to the condition of a mortgage were breached "as determined by Buyer [HSBC]," Equisouth would repurchase that mortgage. Three mortgages that were purchased by HSBC from Equisouth defaulted: The Ferro loan (original amount $68,500), the Rasberry loan (original amount $226,000) and the Lozano loan (original amount $36,000).

HSBC assigned investigators to these three mortgages, who uncovered evidence that, at least in HSBC's eyes, showed material misrepresentations had been made by the mortgagors in securing the mortgages. HSBC demanded repurchase by Equisouth; Equisouth refused. This too, the parties agree on.

However, Equisouth disputes it has an absolute duty to warranty the underlying mortgages. It contends the warrantee only required it to have no *knowledge* of any falsehoods or fraud by mortgagors. As evidence of this, Equisouth offers into evidence the handwritten notation of a single word ("knowingly") next to the warranty paragraph regarding misrepresentations by mortgagors.

- 2 -

Interestingly, Equisouth does not contend and offers no proof that the notation was on the contract before either party signed on to it.

Equisouth also offers evidence tending to show mortgagors did not make material misrepresentations on the loans.

HSBC seeks to enforce the repurchase clause and a clause calling for Equisouth to reimburse it for attorneys fees and reasonable expenses. It asks for summary judgment as a matter of law.

## II. **LEGAL STANDARD**

Summary judgment is appropriate when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED R. CIV. P. 56(c) and *Diamantopoulos v. Am. Family Mut. Ins. Co.,* 10-2522, 2012 U.S. Dist. LEXIS 26519 at *2-3 (N.D. Ill. February 27, 2012). The moving party bears the initial burden of demonstrating there is no genuine issue of material fact. Once it does, the non-moving party must offer more than a mere scintilla of evidence to survive summary judgment. *Id.* All evidence must be viewed in the light most favorable to the non-moving party. Contract interpretation lends itself to summary judgment because the interpretation of a contact is a matter of law. *See Cent. States, Southeast & Southwest Areas Pension Fund v. Waste Management of Michigan, Inc.,*

10-3286, 2012 U.S. App. LEXIS 4074 at *7-8 (7th Cir. February 29, 2012).

### III. ANALYSIS

#### A. Defendants Local Rule 56.1(b) Violations

As a preliminary matter, the Court must decide whether Defendants' response to Plaintiff's Motion for Summary Judgment should be stricken due to (I) its undisputed untimeliness and (ii) its noncompliance with Local Rule 56.1(b).

The Court is willing to overlook the lateness of the filing, but Local Rule 56.1(b) is a harsh mistress not so easily pacified. The rule provides:

> **(b) Opposing Party.** Each party opposing a motion filed pursuant to Fed.R.Civ.P. 56 shall serve and file—
> (1) any opposing affidavits and other materials referred to in FED.R.CIV.P. 56(e);
> (2) a supporting memorandum of law; and
> (3) a concise response to the movant's statement that shall contain:
> (A) numbered paragraphs, each corresponding to and stating a concise summary of the paragraph to which it is directed, and
> (B) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and
> (C) a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon. Absent prior leave of Court, a respondent to a summary judgment motion shall not file more than 40 separately-numbered statements of additional facts. All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted *by the statement* of the opposing party

The Seventh Circuit was faced with almost the exact same procedural scenario as this case in *Eason v. Nolan*, save that the summary judgment movant there was the defendant, rather than Plaintiff here. *Eason v. Nolan*, 416 Fed.Appx. 569, 569-570 (2011). In *Eason*, the non-movant introduced no additional facts in a 56.1(b)(3)(C) statement, but only in a 56.1(b)(3)(B) response. The District Court refused to consider any addition facts introduced in that manner; the Seventh Circuit summarily affirmed.

However, whether to apply the rule strictly and deem any improperly controverted statements admitted is a matter within the Court's discretion. *Stevo v. Frasor,* 662 F.3d 880, 886-87 (7th Cir. 2011) (upholding District Court's decision to admit improperly controverted facts).

Here, as in *Eason*, Defendants failed to file any 56.1(b)(3)(C) statement, and instead introduced all their additional facts as 56.1(b)(3)(B) responses or elsewhere. Striking their reply would be totally appropriate.

However, the Court rules with the purpose of Local Rule 56.1 in mind. "The rule is designed, in part, to aid the district court, 'which does not have the advantage of the parties' familiarity with the record to locate the relevant information.'" *Delanaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011). Here, the relevant facts were not overly difficult to locate because this case was of moderate size and scope. Additionally, Defendants are

represented by out-of-town counsel who presumably were not familiar with the rule's harsh remedy. No doubt, they will be in the future.

Moreover, the Court notes that exercising discretion with the rule, in this instance, brings about no change as far as liability. Only damage amounts remain at issue.

### B. The Contract Was Not Amended by a Margin Notation

Defendants argue that a handwritten word in a margin (the word "knowingly" next to Section 4.A.23) of the contract acted to impose a requirement of knowledge on the part of Defendant Equisouth before a mortgage could be returned for repurchase on the basis of fraud or material representation in the underlying mortgage documents. The paragraph, which is in Section 4, the "Seller's Representations and Warranties" section, reads:

> 23) <u>Genuine Documents and Signatures</u>. All documents submitted by Seller pursuant to this Agreement are genuine, and legal, valid and binding obligations of the Mortgagor, enforceable in accordance with their terms. All parties to the Note and the Mortgage and any other related agreement had legal capacity to enter into the Loan and to execute and deliver the Note and Mortgage and any other related agreement. The Note and Mortgage and all related agreements have been duly and properly executed by the makers thereof. All certified copies of original documents are true copies of the originals. The documents, instruments and agreements submitted for loan underwriting were not falsified and contain no untrue statement of material fact or omit to state a material fact required to be stated therein or necessary to make the information and statements therein not misleading. No fraud was committed in connection with the origination of the Loan.

In the left margin of the contract exhibit submitted by Plaintiff, there is indeed a handwritten notation of "knowingly" next to this paragraph. The handwritten addition is not initialed by either signer of the contract, nor dated.

The parties do not lay out in their statements the precise order in which this agreement was signed, nor does the contract have dates next to each party's signature. But Defendants offer no proof that the word was written on the contract before both parties signed. To the contrary, Capouano testified that he did not believe the word was on the agreement when he "received" it, and that he did not request its inclusion. Plaintiff's corporate representative also testified he did not know who wrote "knowingly" in the margin, or when.

Defendants also do not refute that Section 25 of the contract explicitly requires that any modifications to the agreement must be made "by a writing signed by both parties."

Defendants contend that because no Defendants asked for inclusion of the scienter requirement, and because no Defendants put it there themselves, HSBC necessarily did, presumably out of the goodness of its heart, and thus it became a binding part of the contract. The Court need not begin to address the unlikelihood of this proposition, for even if that is what happened, Defendants have not contested that they did not agree to the handwritten modification, nor did they add it themselves. Thus, even if

Plaintiff was somehow possessed with an insatiable urge to modify the contract against its own best interests, that modification was ineffective and unenforceable under Section 25 of the contract. To have any hope of giving this scrawl force and effect, Defendants needed to show proof that it was on the contract *before either party* signed the contract. Defendants have not done this. Thus, the unexplained scrawl of "knowingly" has no effect on the agreement.

Accordingly, the plain language of the warranty is not conditioned upon "knowingly" selling Plaintiff mortgages containing material falsehoods and frauds; it is rather an absolute warranty against doing so.

### C. The Latitude Granted to Plaintiff by the Contract is not Unconscionable

Defendants next contend that the contract's clause that gives Plaintiff discretion to decide when the warranties were breached is unconscionable. Section 10. provides:

> Seller *shall* repurchase from Buyer . . . (B) *Any* Loan with respect to which the warranties . . . are breached by the Seller *as determined by the Buyer* or wherein, *in Buyer's opinion*, Seller's agent has acted . . . negligently in the origination or closing of the loan

(emphasis added).

Defendants cite one case for this proposition. *Streams Sports Club, Ltd. v. Richmond*, 457 N.E.2d 1226, at 1232 (Ill. 1983). The case does indeed state, as Defendants assert, that a contract is

unconscionable when it is improvident, oppressive, or totally one-sided. Beyond that, the case is wholly inapplicable to this one. In *Streams Sports Club*, a condominium owner contended a provision in her condominium agreement allowing foreclosure for failure to pay annual sports club dues was unconscionable. The Illinois Supreme Court disagreed, dispatching with the unconscionability argument in less than a paragraph.

Here, Defendants do not really develop the unconscionability argument and they do not identify whether they think the contract is procedurally or substantively unconscionable. As a rule, contractual provisions, particularly between two sophisticated business parties, will be enforced unless there is a compelling reason not to do so. *Allen & Co., LLC v. Sanford USD Med. Ctr.*, 08-4596, 2011 U.S. Dist. LEXIS 27098, at *8 (N.D. Ill. March 15, 2011). The Court sees no compelling reason here. Just a contract clause that, while admittedly advantageous for Plaintiff, was willingly agreed to by Defendants.

Defendants contend the "determined by Buyer" language means that "HSBC can surmise any opinion it wants in order to demonstrate a breach of a warranty." Not so. Although neither party identifies it as such, the provision is essentially a satisfaction clause. ("Through a satisfaction clause, a party's exercise of judgment or discretion is a condition for its duty to perform."

*Kohler v. Leslie Hindman*, Inc., 80 F.3d 1181, 1186 (7th Cir. 1996).).

Here, there is a slight twist on the result of dissatisfaction, but the legal framework is the same. Plaintiff made repurchase of a mortgage hinge upon the condition precedent of breach of warranty as to the underlying mortgages. Plaintiff further made itself the arbiter ("as determined by the Buyer") of whether the warranty had been breached. In other words, Plaintiff's satisfaction determines whether the warranty has been breached.

Defendants are correct that, despite the contract's broad grant of discretion to Plaintiff, this discretion is not unlimited. Under Illinois law, satisfaction clauses come in two flavors: "those that make the exercise of discretion purely subjective and those that require the exercise of discretion according to objective factors." *Id*. With the former, discretion is limited by good faith. *Id.* at 1187. With the latter, the bar is even higher: "the party to be satisfied must exercise its authority in a just and reasonable way." *Id.*

The Court need not determine which type of satisfaction clause is involved here, because Plaintiff has submitted proof tending to show, and Defendants have not refuted, that Plaintiff acted with both good faith and "in a just and reasonable way" with respect to return of the three mortgages at issue.

In the case of each mortgage, Plaintiff has advanced undisputed proof that it initiated an investigation into the veracity of the statements made by mortgagers and, before demanding repurchase, secured objective evidence in support of its conclusion that mortgagors had made material false statements. This supports plaintiff's statement of fact that "*HSBC* determined that the [Ferro/Raspberry/Lozano] loan contained a material misrepresentation" (emphasis added) or fraudulent verification by the mortgagor.

In the case of the Ferro loan, at the time Plaintiff demanded repurchase, its investigators had already concluded the borrower had falsified employment information on the mortgage documents. The investigator discovered the borrower, who asserted in loan documents that he worked at a restaurant, had in fact been removed as an agent of that restaurant prior to securing the loan. The investigator also determined the borrower had also started his own restaurant. *See* Dkt. No. 59-3.

Defendants contend this is not conclusive. They maintain the borrower could have, in fact, started his own restaurant *and* continued to work at the first restaurant after being removed as an agent. A subsequent affidavit by the owner of the first restaurant belies this, but whether the borrower did or did not falsify the loan papers is irrelevant. The issue is whether Plaintiff *in good faith* and *in a just and reasonable way* exercised its discretion in

concluding those documents had been falsified "as determined by the buyer."

Defendants have not put forth any evidence that Plaintiff's investigation was a sham, or that its conclusions were not undertaken in good faith, or not made in a just and reasonable way. Defendants merely contend there is a dispute as to whether falsification in fact occurred. But that is not a material fact, because the contract does not call for actual falsification as a condition of repurchase; it calls for a determination to Plaintiff's satisfaction that falsification occurred, subject to the law's constraint of good faith or a just and reasonable determination. Plaintiff's investigations and the resultant facts learned gave it a good-faith and reasonable basis to conclude the Ferro loan had been falsified, and Defendants do not submit any proof to the contrary.

The Raspberry and Lozano loans follow much the same pattern. With the Raspberry loan, the Plaintiff's investigator learned from the alleged employer of the co-borrowers that one co-borrower had never worked there and the other had quit one week prior to the lender's verbal verification of employment. Further, the investigator got Kevin Raspberry to admit he had falsified employment and salary information. The investigator learned this prior to Plaintiff's demand for repurchase. *See* Dkt. No. 59-4.

- 12 -

With the Lozano loan, the Plaintiff's investigator concluded that Lozano had falsified his intent to use the mortgaged property as a primary residence. Admittedly, the investigator's evidence was thinner here. He wrote that the borrower never "reported" to the subject property after buying it, but the investigator did not specify exactly how that information was ascertained. What was cited as evidence was the fact that the one payment made on the mortgage came via a check with the borrower's old address. The other evidence was the discovery that there was no phone account active at the mortgage address. *See* Dkt. No. 59-6.

Thin as this may be, the Court cannot say that the conclusion was not made in good faith or in a manner that was not fair or reasonable, particularly in light of a subsequent affidavit by that mortgagor that he did not ever take up residence there.

As with the first loan, Defendants' only contention with these two loans is that other objective evidence creates a contested fact as to whether falsification occurred. They do not contest the investigations occurred or that the conclusions reached were arrived at in bad faith or in an unfair or unreasonable way.

### D. Section 4.A.7 of the Contract is Irrelevant to this Dispute

Finally, Defendants contend that Section 4.A.7 is unenforceable because a document to which it refers (the HFS Seller Guide) was not produced in discovery after an oral request for it in a deposition. The section is a warranty clause providing:

- 13 -

> 7) <u>Accuracy of Statements</u>. Neither this Agreement nor any statement, report or other document furnished or to be furnished pursuant to this Agreement, the HFS Seller Guide or any Letter, or in connection with the transactions contemplated hereby, contains any untrue statement of fact or omits to state a fact necessary to make the statements contained therein not misleading.

This is irrelevant for several reasons. Although Plaintiff went to the trouble of including this section in its statement of facts, liability is still found without it. Section 4.A relates to Seller's representations "as to Seller." *See* Dkt. No. 58-6, 3. Plaintiff has alleged and shown proof in support of liability predicated on Section B, Seller's warranty as to "each Mortgage Loan." *Id.* at 6. Indeed, if Plaintiff had not pegged liability on Section 4.B, fewer trees would have been wasted discussing the handwritten "knowingly" next to Section 4.B.23. Plaintiff nowhere alleges that Defendants made any misrepresentations themselves (a Section 4.A. warranty breach), only that the underlying mortgagors did (a Section 4.B warranty breach).

Additionally, even if Section 4.A.7 were a vehicle for liability in this case, Plaintiff has not alleged any liability dependent on the HFS Seller Guide, only upon the agreement. Therefore, non-production of the HFS seller guide is immaterial. Further, if Defendants actually needed production of the HFS Seller Guide, they were free to come in on a motion to compel before the close of discovery. They did not.

- 14 -

**E. Damages**

*1. Mitigation of Damages*

Defendants argue that Plaintiff failed to mitigate its damages because it refused to allow Defendants to negotiate with mortgagors to try to recoup some or all of the money lost to Plaintiff. Defendants filed an affidavit stating that all other mortgage buyers allow them, upon a demand for repurchase, to try to negotiate with mortgagors. They also unequivocally state that they have always been able to obtain at least partial recovery. Plaintiff responds that this argument is too speculative to survive summary judgment, but cites no on-point case law to back it up.

The Court, too, had trouble finding case law exactly on point. But in general, the reasonability of mitigation efforts is something for a jury to decide. More specifically, in *Greyhound Financial Corporation v. TSM Financial Group, Inc.*, a court in this district handled a very similar contract, and likewise found mitigation an issue for the jury. *Greyhound*, 92-3750, 1993 U.S. Dist. LEXIS 10873 (N.D.Ill. August 5, 1993). In *Greyhound*, the plaintiff was a purchaser of loans and the defendant a loan seller who refused to buy back defaulted loans. The defendant in *Greyhound* also alleged that the buyer was uncooperative in seller's requests to intervene in an effort to salvage the loans. *Id*. at *3. "Whether or not Greyhound's actions were reasonable is a

question for the finder of fact and beyond the scope of summary judgment." *Id*. at *17.

### 2. *Calculation of the Lozano Loan Damages*

Likewise, as to the calculation of payments on the Lozano loan, Defendants have raised a dispute over material fact as to whether HSBC properly calculated and credited payments Lozano made. Defendants say Lozano made payments not credited against the total original loan balance of $36,000. Plaintiff's damages calculation spreadsheet does reflect a balance of $36,000 for the Lozano loan, the total purchase price, while the other two loans have lesser-than-original balance amounts. As noted earlier, Plaintiff's investigative report regarding the Lozano loan acknowledged at least one payment was made by way of check.

Plaintiff's formal response points to their damages calculation spreadsheet and an affidavit swears that the number of days of "lapse" in their calculation is the correct number of days. But that would seem to go to interest calculations, not outstanding balance. It is not known whether the one Lozano check received bounced, and that is why Plaintiff does not credit it, but in any case, Plaintiff's inclusion of the investigative report noting a payment was made, combined with the spreadsheet apparently indicating it was not credited, gives rise to an issue of material fact.

### *3. Attorneys' Fees*

Plaintiff has shown that the Defendants indemnified it for "legal fees and related costs . . . resulting from . . . a breach of Seller's covenants, representations and warranties under this Agreement," and Defendants do not contest that they owe attorneys fees if they are indeed liable. Rather, they cite the relatively modest scope of this case and reason that Plaintiff's $72,992.34 claim is excessive and unreasonable. Plaintiff responds with an affidavit that that is the amount it has actually incurred or already paid.

The Court finds that, under the contract, the Defendants are liable for attorney fees. However, when a case is not entirely disposed of on summary judgment, it can be appropriate to settle the amount later. *See Lyon Fin. Servs. v. Jude's Med. Center*, *Ltd.*, 10-6957, 2011 U.S. Dist. LEXIS 139173 (N.D. Ill. December 5, 2011) (granting partial summary judgment, but deferring the consideration of attorneys' fees to a later date).

Plaintiff in this instance has set its requested amount based on a cutoff date of the end of October 2011, which does not take into account the Motion for Summary Judgment, which Plaintiff will invariably seek to recover. The Court sees no need to calculate such amounts twice. Although reasonable attorneys fees and related costs are granted, the exact amount is left for determination at a future date.

**F.   The Capouano Guaranty**

Plaintiff introduced evidence, which Defendants do not contest, that Defendant Capouano personally guaranteed the FLA. Therefore, the Court finds Defendant Capouano personally liable under the guaranty and grants summary judgment against him in the same areas where it is granted against Equisouth.

**IV.   CONCLUSION**

For the reasons stated herein, the Court finds for Plaintiff on the issue of liability and grants partial summary judgment on these issues.  However, Defendants have raised issues of material facts in regards to the damages issues of mitigation of damages and the proper calculation of the Lozano loan damages, and summary judgment on those topics is denied.  Additionally, while attorneys fees are granted, the calculation of the amount is reserved for a later date.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　Harry D. Leinenweber, Judge
　　　　　　　　　　　　　　　　　　　United States District Court

**DATE:** 6/1/2012